# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| JOHN MOSBY and PHYLLIS MOSBY, | Civil No. 07-3905 (JRT/RLE) |
| Plaintiffs, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| FREDERICK C. MCGEE and ST. JAMES LUTHERAN CHURCH, | |
| Defendants. | |

> Marshall H. Tanick and Steven V. Rose, **MANSFIELD TANICK & COHEN, PA**, 220 South Sixth Street, Suite 1700, Minneapolis, MN 55402, for plaintiffs.
>
> Thomas A. Pearson and David L. Christianson, **CRONAN PEARSON QUINLIVAN**, 1201 Marquette Avenue South, Suite 110, Minneapolis, MN 55403, for defendants.

This case arises out of a fire at the home of plaintiffs John and Phyllis Mosby. The fire occurred after a houseguest, defendant Frederick McGee, dumped ashes from a smoking pipe into a planter located on the deck of the Mosbys' home. McGee is a former minister, and he was staying at the Mosby's home while attending a conference held in Minnesota and paid for by his church, defendant St. James Lutheran Church in Southbury, Connecticut ("St. James"). The Mosbys brought this action against McGee and St. James, alleging that the fire was caused by McGee's negligence and occurred within the scope of McGee's employment for St. James. This case is now before the Court on motions by both parties seeking summary judgment as to McGee's negligence;

motions from the Mosbys and St. James seeking summary judgment as to St. James's vicarious liability for McGee's conduct; and an additional motion brought by the defendants seeking to eliminate certain items of damages claimed by the Mosbys. For the reasons given below, the Court denies both motions concerning McGee's negligence; denies the motion brought by the Mosbys and grants the motion brought by St. James concerning St. James's vicarious liability; and grants in part defendants' motion to eliminate certain items of damages.

## BACKGROUND

As of 2001, McGee was employed as a pastor at St. James. In September 2001, he came to the Twin Cities to attend a conference set up by a religious organization. McGee's trip to the conference was approved and paid for by St. James.

McGee and John Mosby were friends from their days in college, and during the conference McGee stayed with John Mosby and his wife Phyllis in their three-bedroom home in Plymouth, Minnesota. McGee arrived on September 9 and intended to stay until September 14.

McGee smokes a pipe. The Mosbys were aware of this habit, and allowed McGee to smoke at their home as long as he did so outside. In the evenings, after the events had finished for the day at his conference, McGee would smoke alone on a deck attached to the upper floor of the Mosbys' home. Most nights, McGee would discard his ashes in the grass at the bottom of the deck stairs or on a nearby driveway. On the night of September 13, however, McGee discarded the ashes into a planter on the deck. McGee indicated

that he thought it was too dark to go down the deck stairs, and that he did not want to move around too much and disturb the Mosbys, who were asleep.  (Rose Aff., Docket No. 47, Ex. A, at 111.)

Later that night, a fire started and caused extensive damage to the Mosbys' home. A report prepared by an insurance company indicated that the fire, while "accidental in nature," had started from McGee's pipe ashes.  (*Id.*, Ex. J.)

The Mosbys subsequently filed this action against McGee and St. James.  The Mosbys allege that the fire was caused by McGee's negligence and occurred within the scope and course of his employment for St. James.  The Mosbys have asked for $1,918,554 in damages, for items ranging from property damage to hourly wages for their personal time addressing issues related to the fire.  Further details of these requests are set forth below.

Collectively, the parties have filed five motions for summary judgment:  (1) the Mosbys have moved for summary judgment as to McGee's liability for the fire; (2) defendants have moved for summary judgment as to McGee's negligence on the night of the fire; (3) St. James has filed a motion for summary judgment as to its vicarious liability for McGee's conduct; (4) the Mosbys have filed a summary judgment motion as to the vicarious liability of St. James; and (5) defendants have filed a separate motion for summary judgment seeking to eliminate certain items of the Mosbys' claimed damages.

## ANALYSIS

### I.   STANDARD OF REVIEW

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### II.   MCGEE'S NEGLIGENCE (COUNT 1)

"The essential elements of a negligence claim are: (1) the existence of a duty of care; (2) a breach of that duty; (3) an injury was sustained; and (4) breach of the duty was the proximate cause of the injury." *State Farm Fire and Cas. v. Aquila Inc.*, 718 N.W.2d 879, 887 (Minn. 2006) (internal quotation marks omitted). "Where reasonable men may differ as to what constitutes ordinary care and proximate causal connection upon the evidence presented, questions of negligence and proximate cause . . . are questions of fact for the jury . . . ." *Schmidt v. Beninga*, 173 N.W.2d 401, 406 (Minn. 1970) (internal quotation marks omitted). "[I]t is only in the clearest of cases where the facts are undisputed and it is plain that all reasonable [persons] can draw only one conclusion that

the question of negligence becomes one of law." *Id*. (internal quotation marks omitted). Here, both parties argue they are entitled to summary judgment on the question of whether McGee was negligent.

The Mosbys argue that it is clear beyond dispute that McGee failed to take adequate care when he discarded his ashes in the planter.  As evidence of this, the Mosbys note that McGee had previously been more careful in dropping his ashes farther away from the house, suggesting some understanding on the part of McGee that simply dropping the ashes in the planter was unsafe.  The Mosbys add that the insurance company's report demonstrates that the ashes were the proximate cause of the fire.

McGee responds that it is clear, as a matter of law, that he was not negligent.  He points to passages from the Mosbys' depositions where they admit that they did not believe the planter was a fire hazard, (*see* Pearson Aff., Docket No. 55, Ex. B, at 58; Ex. A, at 30.), and Phyllis Mosby's admission that she did not realize that there was any material in the planter other than dirt.  (*Id.*, Ex. A, at 28.)  In short, McGee argues that nothing hinted that his pipe ashes would cause the material in the planter to ignite. McGee also contends that despite the insurance report, it is not sufficiently clear that the ashes were the cause of the fire.  McGee notes that the fire started several hours after he finished smoking, and that other causes – such as a short circuit or an appliance failure – cannot be ruled out as a matter of law.

The Court concludes that the question of whether McGee was negligent in the disposal of his ashes is a question that must be decided by a jury.  As to the Mosbys' motion for summary judgment, the fact that McGee dumped his ashes elsewhere on the

days leading up to the fire would surely be relevant evidence at trial.  As the Mosbys suggest, it may tend to show that a reasonable person believed this additional precaution was necessary in order to adequately guard against the risk of a fire.  The Court does not agree, however, that this evidence makes this the "clearest of cases" allowing only one reasonable conclusion as to whether McGee was negligent.  As noted above, Phyllis Mosby believed that the planter was filled with dirt, a substance that would not ordinarily be expected to support the start or spread of a fire.  In addition, the Mosbys, who would have been far more familiar with their own planter than McGee, both indicated that they did not believe the planter posed a fire risk.  This testimony would be sufficient for a reasonable juror to conclude that an ordinarily cautious person would not have recognized any risk in using the planter to discard smoking materials, and that McGee's actions did not violate the applicable duty of care.

The Mosbys' comments and the apparent composition of the material in the planter, however, are not sufficient to prove that McGee's actions met the applicable duty of care as a matter of law.  It is possible, for instance, that the Mosbys are not particularly knowledgeable about the proper way to dispose of smoking materials, and that McGee, an experienced smoker, should have known to inspect the planter more carefully.  In addition, as noted above, McGee's earlier actions raise some doubt as to whether he believed his use of the planter on the night of the fire was sufficiently careful.  Those facts, while not especially persuasive to the Court, would be legally sufficient to convince a juror of McGee's negligence.  In those circumstances, this issue must be submitted to a

jury.   Accordingly, both parties' motions for summary judgment as to McGee's negligence are denied.

## III.   ST. JAMES'S LIABILITY (COUNT II)

"Under the well-established principle of respondeat superior, an employer is vicariously liable for the torts of an employee committed within the course and scope of employment." *Fahrendorff v. N. Homes, Inc.*, 597 N.W.2d 905, 910 (Minn. 1999) (internal quotation marks omitted).   "Such liability stems not from any fault of the employer, but from a public policy determination that liability for acts committed within the scope of employment should be allocated to the employer as a cost of engaging in that business." *Id.*   However, "[t]o support a finding that an employee's negligent act occurred within his scope of employment, it must be shown that his conduct was, to some degree, in furtherance of the interests of his employer." *Edgewater Motels, Inc. v. Gatzke*, 277 N.W.2d 11, 15 (Minn. 1979).   "Other factors to be considered in the scope of employment determination are whether the conduct is of the kind that the employee is authorized to perform and whether the act occurs substantially within authorized time and space restrictions." *Id.*

Here, both parties argue that they are entitled to summary judgment on the question of whether McGee's disposal of his ashes occurred within the course and scope of his employment for St. James.   The Mosbys note that McGee attended the conference with St. James's approval, that St. James covered some of McGee's conference-related expenses, and that the conference benefited the St. James congregation.   The Mosbys also

note that St. James knew McGee was a smoker, and was thus aware of the risk of a fire. St. James responds that McGee's smoking was a personal matter that took place at a friend's house, outside the hours of the conference, and that it therefore occurred outside the course and scope of his employment.

The Minnesota Supreme Court addressed a similar fact pattern in *Edgewater Motels, Inc. v. Gatzke*. There, the employee, A.J. Gatzke, was staying in a motel in Duluth while he helped the Walgreen Company open a new restaurant. 277 N.W.2d at 13. One evening, after several hours discussing the new restaurant over drinks at a Duluth bar, Gatzke returned to his motel room and smoked a cigarette while he finished filling out some expense reports. *Id*. at 14. His cigarette butt later started a fire in the motel room's waste basket and caused over $300,000 in damage to the motel. *Id*. The motel sued Gatzke for the damage and alleged that the Walgreen Company was vicariously liable.

The *Gatzke* court first concluded that it could not dismiss the possibility that Walgreen was vicariously liable simply because the damage was caused by smoking, an activity that was not required as part of Gatzke's job. The court explained, "an employee does not abandon his employment as a matter of law while temporarily acting for his personal comfort when such activities involve only slight deviations from work that are reasonable under the circumstances, such as eating, drinking, or smoking." *Id*. at 16. Thus, "an employer can be held vicariously liable for his employee's negligent smoking of a cigarette [if] he was otherwise acting in the scope of his employment at the time of the negligent act." *Id*. The Court then determined that there was sufficient evidence for a

jury to believe that Gatzke was acting within the scope of his employment throughout the evening of the fire. *Id.* The court noted that the expense reports Gatzke was filling out while he was smoking were related to his employment for the Walgreen Company, and that he did not necessarily step out of the course of employment during his evening of business-oriented conversation at the bar. *Id.* Finally, the court added that Gatzke was effectively a "24-hour-a-day man" with a motel room for a temporary office, meaning that his smoking was within the "time and space" of his employment. *Id.* at 17.

Here, the Court concludes that *Gatzke* is distinguishable, and that there is insufficient evidence in this case for a jury to find St. James vicariously liable for any damages caused by McGee. First, unlike in *Gatzke*, there are no indications that McGee was doing anything related to his employment for St. James while he was smoking. While Gatzke's smoking took place while he was completing expense reports for his employer, the record indicates that McGee was merely standing on the Mosbys' deck in the dark, hours after the events at the conference had finished for the day. Second, Gatzke considered his motel room his "office away from home," meaning that his smoking effectively occurred in the workplace. 277 N.W.2d at 17. There are no indications that anything similar can be said about the Mosbys' home, which was merely a place where McGee happened to be staying during the conference, and was not paid for by St. James. In sum, McGee was smoking after the conference events were over for the day, at a time when he was not doing anything traceable to his work responsibilities, in a place that had no formal connection to his employment for St. James. In those circumstances, the Court finds no evidence sufficient to persuade a reasonable juror that

McGee's actions on the night of the fire were "in furtherance of the interests of his employer." *Gatzke*, 277 N.W.2d at 15 (Minn. 1979).  To hold otherwise in the facts of this case would be to hold employers responsible for any and all actions taken by traveling employees.  This Court finds no basis in the law for such an expansive view of vicarious liability.  Accordingly, the Mosbys' motion for summary judgment as to St. James's vicarious liability is denied, and St. James's motion is granted.

## IV.    MISCELLANEOUS DAMAGES

Following the fire, the Mosbys received insurance proceeds to compensate them for their damages.  Now, however, they seek an additional $1,918,554 beyond that recovery.  Defendants argue that a number of the specific expenses sought by the Mosbys should be excluded as a matter of law.  Those expenses are considered separately below.[1]

### A.    Vehicle Damage

The Mosbys lost two cars in the fire:  a 1997 Buick Regal and a 1992 Honda Accord.  Their insurance company assessed the values of these two vehicles as $10,566.91 and $6,655.85, respectively, (*see* Third Rose Aff., Docket No. 83, Ex. 8), and ultimately paid the Mosbys a total of $17,842.76.  (*Id.*, Ex. 9.)  The Mosbys argue, however, that they are entitled to additional damages for the loss of these vehicles.  The Mosbys first argue that they were not made whole in their negotiations with their insurance company, in part because they were required to pay a $1000 deductible.  The

---

[1] Defendants' initial motion sought to exclude the Mosbys' request for attorney's fees. Because the Mosbys have now indicated that they will not be seeking attorney's fees, (*see* Docket No. 82 at 21 n.5), that portion of the defendants' motion is denied as moot.

Mosbys also contend they "were unable to obtain the quality vehicles they had at the time of the fire for the amount of the insurance proceeds." (Pls.' Mem., Docket No. 82 at 22.) The Mosbys contend that because of this failure to find vehicles of adequate quality, they are entitled to an additional $34,000. In his deposition, John Mosby explained that he reached this figure by determining the price of a **2001** Honda Accord and a **2001** Buick Regal, and then subtracting the check he received from his insurance company. (J. Mosby Depo. at 96-97.) Defendants seek to exclude the Mosbys' request for vehicle damages, contending that there is no evidence to substantiate the Mosbys' alleged losses, and no workable theory that would render them recoverable.

Where property is totally destroyed, the claimant typically may recover the full value of the property at the time of the destruction, minus the salvage value of what is left. Second Restatement of Torts § 927. "[T]he measure of damages for injuries to property . . . which is not totally destroyed is the difference in value before and after, or the cost of restoration, whichever is the lower amount." *Rinkel v. Lee's Plumbing & Heating Co.*, 99 N.W.2d 779, 783 (Minn. 1959). Here, it is undisputed that the Mosbys' vehicles were "total" losses. Accordingly, as set forth above, they are entitled to the value of those vehicles at the time of the fire, minus the salvage value of what remained. If the Mosbys' insurance proceeds did not fully cover the amount they were entitled to under that principle, then they are free to seek their unrecovered loss at trial.

This Court finds no basis in law or reason, however, for allowing the Mosbys to calculate their losses starting with the values of 2001 models of their vehicles. In short, the Mosbys did not own 2001 models, and they are not entitled to pursue damages as if

they did.  Any vehicle damages that the Mosbys seek at trial must be based on the actual value of their actual vehicles at the time of the fire.  Accordingly, while the specific vehicle damages available to the Mosbys will be a question for the jury, defendants' motion is granted to the extent that it seeks to prevent the Mosbys from seeking damages based on the value of vehicles they did not own.

### B.    Real Estate Damages

In 2004, approximately two years after their home was repaired, the Mosbys tried to sell it.  The Mosbys claim that the buyer "withheld" $45,000 "because of potential fire damage."  (Pl.'s Opp'n Mem., Docket No. 82, at 22.)  Defendants point out, however, that John Mosby admitted in his deposition that the house was more valuable after the post-fire repairs than it was before the fire.  (Pearson Aff., Docket No. 51, Ex. B at 114-15.)  Thus, defendants argue, the Mosbys should not be allowed to seek any damages arising from damage to their home.

As noted above, "the measure of damages for injuries to property . . . which is not totally destroyed is the difference in value before and after, or the cost of restoration, whichever is the lower amount."  *Rinkel v. Lee's Plumbing & Heating Co*., 99 N.W.2d 779, 783 (Minn. 1959).  In addition, "[i]n a negligence action, the plaintiff generally has the burden of proving, by a preponderance of the evidence, damages caused by the defendant."  *Rowe v. Munye*, 702 N.W.2d 729, 735 (Minn. 2005).  "The plaintiff must demonstrate with reasonable certainty the nature and probable duration of the injuries sustained."  *Id*.

Here, the Court agrees that the Mosbys have not provided adequate evidence to submit this damage claim to a jury.  As explained above, a jury would be required to assess the damages to the Mosbys' home either by (1) determining the cost of any repairs or (2) comparing the value of the home before the fire with the value of the home after the fire.  *See Rinkel*, 99 N.W.2d at 783.  The Mosbys have not based this damage request on any expenses for repairs, leaving the pre-fire and post-fire comparison as their only avenue for relief.  As the defendants point out, however, the Mosbys have not identified any evidence of the home's pre-fire value.[2]  Without such evidence, there is no way for a jury to compare the home's pre-fire value with its value after the repairs paid for by the Mosbys' insurer, and, in turn, no basis for a jury to conclude that the home suffered a loss in value that the Mosbys have not already been compensated for.  Moreover, as noted above, John Mosby testified in his deposition that the home's post-fire value was actually greater than its pre-fire value.  (Pearson Aff., Docket No. 51, Ex. B at 114-15.)  In those circumstances, mere comments from a buyer about how the fire impacted his or her subjective impressions of the home's value are not enough to establish a compensable loss, particularly where those comments were made in the context of an arm's-length negotiation.  Accordingly, the Mosbys will not be permitted to submit this damage claim to a jury.

---

[2] When asked about the value of the home in her deposition, Phyllis Mosby responded that she did not know the home's value at the time of the fire, but believed that they had purchased the home for approximately $105,000 in 1982 and sold it for approximately $680,000 in 2004.  (Third Rose Aff., Docket No. 83, Ex. 4 at 19-20.)  John Mosby also indicated that he had "no idea" what the value of the home was before the fire.  (*Id*., Ex. 5 at 107.)

C.      **Value of the Mosbys' Time**

The Mosbys also claim that they are entitled to compensation for time that they spent working on issues related to the fire.  In an interrogatory response, they asserted an entitlement to $593,000 to compensate John Mosby for his "time handling fire related issues," and $159,500 to compensate Phyllis Mosby for her time spent on those issues. (Pearson Aff., Docket No. 68, Ex. A.)  They indicated that they calculated these amounts based on a determination that John Mosby was entitled to $250 per hour and Phyllis Mosby was entitled to $125 per hour.  (*Id.*)  Defendants argue that this damage claim should be dismissed because (1) damage claims arising out of property damage only permit plaintiffs to seek compensation for their actual property damage and for any consequential out-of-pocket expenses, and do not allow plaintiffs to recover for their lost time; and (2) Minnesota law does not allow plaintiffs to recover damages covering repair efforts that are not economically feasible, as would be the case if the Mosbys' repair efforts truly were worth more than $752,000.

The parties both indicate that they have failed to uncover any Minnesota case where a plaintiff was awarded an hourly wage for time spent addressing property damage.  Nor has either party cited to any cases elsewhere or any secondary sources addressing this question.  *Cf. Eklund v. Evans*, 300 N.W. 617, 619 (Minn. 1941) (explaining that damagers arising out of **personal injuries** caused by negligence "may consist of compensation for numerous items, such as physical pain and suffering, loss of earning capacity, value of time lost on account of injuries, expenses for medical treatment, hospitalization and nursing, and so on").  The absence of any case or

commentary on this issue is conspicuous, because it could plausibly arise in every case involving property damage. Every plaintiff in such a case presumably spends at least some time addressing issues related to their losses, and if pay for that time were recoverable, it would seem likely to be tacked on as an additional damage request in every complaint. *See also* Minnesota Practice, Jury Instruction Guides – Civil § 92.10 (5th Ed.) (outlining the appropriate damages instruction where property is not damaged beyond repair, as in the case of the Mosbys' home, and failing to include any provision for time spent by the plaintiffs).

In the absence of more specific guidance, the Court turns to the principles that govern damage claims in property damage cases generally. As the Minnesota Supreme Court has explained in a case involving damage to a home, "[o]rdinarily the measure of damages for injuries to property of this character which is not totally destroyed is the difference in value before and after, or the cost of restoration, whichever is the lower amount." *Rinkel*, 99 N.W.2d at 783. The Court notes that as a general matter, it may well be plausible in certain circumstances for plaintiffs to characterize wage requests as part of the alleged "cost of restoration" of their home. Put simply, if a homeowner hires a contractor to handle the reconstruction their home, it would seem relatively uncontroversial that they would be free to seek those expenses as part of the "cost of restoration." Where plaintiffs bear those costs themselves – as, for example, where a plaintiff with expertise in carpentry elects to rebuild her own cabinets – it may be difficult to justify punishing them for relying on their own labor.

Ultimately, however, this case does not require the Court to conclusively resolve the parameters for damages arising from property damage generally, because even if these damages are theoretically available, the Mosbys have failed to produce evidence that would allow a jury to reasonably assess the recoverability and extent of those damages here.  As explained above, it is the plaintiff's burden to prove his or her damages, including their "nature and probable duration," "with reasonable certainty." *Rowe*, 702 N.W.2d at 735.  This responsibility takes on added importance here, where the Mosbys have sought damages for their time that dwarf any alleged uncompensated losses to their actual property, and where those damages may well hinge on subtle factual and legal distinctions.  In spite of those issues – which the Mosbys were clearly placed in dispute in defendants' brief requesting summary judgment – the Mosbys have failed to provide any evidence or affidavits itemizing the specific hours that they spent on specific tasks.

The nearest the Mosbys come to such an explanation is in John Mosby's deposition.  There, he offers examples of some of the things that occupied he and his wife's time, including replacing lost household items and interacting with building inspectors. (Third Rose Aff., Docket No. 83, Ex. 5 at 118.)  He also lists various sources that he used to calculate the hourly totals, including purchase receipts, contract dates, and the dates from the back of pictures downloaded onto his computer.  (*Id.* at 123.) However, nowhere in the record is there (1) a complete list of all of the tasks that Mosby included in his calculation; (2) a list of the specific hours that the Mosbys attributed to each task; or (3) an explanation for how John Mosby performed his tabulations that is

detailed enough for the defendants to raise a challenge, or for a jury to make a reasoned assessment as to its accuracy.  In short, all that the Mosbys have offered to substantiate their claim is an undifferentiated hour total, encompassing tasks as disparate as "find[ing] out the cost of a carton of eggs" and "deal[ing] . . . with the contractors."  (*See id.* at 119, 123.)  On that record, if a jury found that some of the Mosbys' tasks were plausibly caused by the fire and others not, they would have no way of determining how to appropriately discount the Mosbys' total requested damage figure.  Nor would they have an opportunity to assess the amount of time spent on any specific task to determine if it was reasonable.  In those circumstances, the Court concludes that the Mosbys have failed to provide evidence that is legally sufficient for a jury to find that they have proven this damage claim to a "reasonably certainty."[3]  Accordingly, this portion of the Mosbys' damage claim is dismissed.

### D.    Lost Income and Benefits

The Mosbys also seek $500,000 for John Mosby's lost income, lost employment benefits, lost contributions to his 401k retirement plan, lost future earnings, and lost social security contributions.  Defendants argue that these damages are too "remote and speculative" to be recovered, *see Jackson*, 249 N.W.2d at 897, and that they should be dismissed as a matter of law.  The Court agrees.

---

[3] Put another way, "[d]amages which are remote and speculative cannot be recovered," *Jackson v. Reiling*, 249 N.W.2d 896, 897 (Minn. 1977) (deciding this issue as a matter of law), and with the state of the record, damages based on the Mosbys' engagement in any specific tasks could not be based on anything rising above speculation.

Even assuming that these damages are available in principle, in order for the Mosbys to recover them, a jury would have to conclude that the fire at their home was causally responsible for John Mosby losing his job. The Mosbys have offered no argument or evidence in their brief demonstrating that this is so, and this Court has not uncovered evidence sufficient to support this strained proposition in its independent review of the record. In those circumstances, the Court concludes that the connection between those damages and the fire is simply too speculative to survive summary judgment. Accordingly, this portion of the Mosbys' damage claim is dismissed as well.

### E.    Emotional Distress

Finally, the Mosbys ask for $500,000 to compensate for their pain and suffering. Defendants argue that this claim should be dismissed because under Minnesota law a plaintiff seeking to recover damages for emotional distress must prove that the distress was accompanied by physical manifestations.[4]

Under Minnesota law, "the general rule regarding the negligent infliction of emotional distress has been that there can be no recovery absent some accompanying physical injury." *Langeland v. Farmers State Bank of Trimont*, 319 N.W.2d 26, 31 (Minn. 1982). "In cases in which physical symptoms occur subsequent to and because of the plaintiff's emotional disturbance, many jurisdictions, including [Minnesota], require the plaintiff to have been in some personal physical danger caused by the defendant's negligence before awarding damages for emotional distress." *Id*. However, even in cases

---

[4] The Court notes that defendants do not argue that these damages are unavailable in a property damage case.

involving such delayed reactions, the physical symptoms still must be proven in order for the plaintiff to recover. *See Quill v. Trans World Airlines, Inc.*, 361 N.W.2d 438, 443 (Minn. Ct. App. 1985) (explaining that while the physical injury or symptom requirement has been abandoned in some jurisdictions elsewhere, it continues to apply in Minnesota). The question here is whether either of the Mosbys has suffered a physical injury that satisfies this requirement.

As to Phyllis Mosby, the Court needs to look no further than her deposition. That deposition included the following exchange, which came after Phyllis Mosby was asked about any physical symptoms that had arisen after the fire:

Q:     I'm interested in anything that you connect with the fire.

[Phyllis Mosby]:  No.

Q:     No physical manifestation or indication that you can connect with the fire.

[Phyllis Mosby]:  No.

Q:     Is that correct?

[Phyllis Mosby]:  That is correct.

(Third Rose Aff., Docket No. 83, Ex. 4 at 62.)  In other words, Phyllis Mosby expressly disavowed a prerequisite for recovery.  In those circumstances, the Mosbys will not be permitted to seek damages for any mental distress suffered by Phyllis Mosby.

John Mosby, however, testified to several specific physical symptoms that he experienced after the fire.  He stated

> I gained weight, my blood pressure was elevated. It's possible that I can attribute some allergic sorts of reactions to the stress that surrounded that scenario. I have developed some arthritic conditions.

(Third Rose Aff., Docket No. 83, Ex. 5 at 86.) He also mentioned that he has suffered from sleeplessness. (*Id*. at 87.) Symptoms of similar severity have been deemed sufficient to allow damages for mental distress by Minnesota state courts. *See Silberstein v. Cordie*, 474 N.W.2d 850, 857 (Minn. Ct. App. 1991) (explaining that a plaintiff had suffered "insomnia, loss of appetite, headaches and muscle tension"); *Quill*, 361 N.W.2d at 443 (finding, after a particularly traumatic experience, that "sweaty hands" and "elevated blood pressure" were sufficient). Moreover, these symptoms were, of course, allegedly triggered by John Mosby waking up and fleeing his burning home in the middle of the night. The purpose of the physical symptom requirement is to ensure that a plaintiff's claim is "real," *Quill*, 361 N.W.2d at 443, and these circumstances help reinforce that this purpose is satisfied. Accordingly – while the Court is skeptical of the dollar amount that John Mosby assigns to this claim, and will monitor the evidence supporting these damages very carefully at trial – when the record is read in the light most favorable to John Mosby, the non-moving party, the Court concludes that his claim for damages arising out of mental distress is sufficient to survive summary judgment.[5]

---

[5] The Court adds that defendants have argued that John Mosby specifically disavowed any connection between his symptoms and the fire. (*See* Third Rose Aff., Docket No. 83, Ex. 5, at 87-90.) The Court has carefully reviewed the portions of the deposition where these alleged admissions take place, and agrees that they raise substantial doubts about John Mosby's likelihood of recovering significant damages at trial. However, when placed alongside the earlier passage quoted above, where John Mosby plainly attributes several physical symptoms to his distress from the fire, the Court does not find these alleged admissions sufficient to justify summary judgment.

This case will be placed on the Court's next available trial calendar.

## ORDER

Based on the foregoing, all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.      Plaintiffs' motion for partial summary judgment as to defendant McGee's negligence [Docket No. 44] is **DENIED**.

2.      Defendants' motion for summary judgment as to defendant McGee's negligence [Docket No. 52] is **DENIED**.

3.      Defendants' motion for summary judgment as to the vicarious liability of defendant St. James [Docket No. 60] is **GRANTED**.  The plaintiffs' motion for partial summary judgment as to the vicarious liability of defendant St. James [Docket No. 80] is **DENIED**.  Count II is therefore **DISMISSED**.  Accordingly, St. James is **DISMISSED** as a defendant in this case.

---

The Court also notes that defendants claim the Mosbys abandoned any allegation that physical symptoms were caused by the fire in proceedings before the Magistrate Judge.  (*See* Minute Order, Docket No. 42, at 10.)  However, a review of the representations made by the Mosbys in their brief on this issue suggests that their concessions related to the type of testimony that they intended to produce at trial, as opposed to whether they intended to continue to pursue damages for mental distress.  (*See* Mem., Docket No. 35, at 7.)

4.      Defendants' motion for partial summary judgment regarding certain items of damages [Docket No. 65] is **GRANTED in part** and **DENIED in part** as follows:

a.      The motion is **GRANTED** as to:

(1)      vehicle damages to the extent that this request is based on the value of car models that the plaintiffs did not actually own;

(2)      real estate damages that are based on an alleged $45,000 withholding by a purchaser of the plaintiffs' home;

(3)      damages to compensate the plaintiffs for time that they spent handling "fire-related" issues;

(4)      plaintiff John Mosby's claim for lost income, lost employment benefits, lost contributions to his 401k retirement plan, lost future earnings, and lost social security contributions; and

(5)      plaintiff Phyllis Mosby's claim for damages arising out of her mental distress.

b.      As to plaintiffs' request for attorney's fees, the plaintiffs have now withdrawn that request, and defendants' request to exclude these fees is therefore **DENIED as moot**.

c.      In all other respects, the motion is **DENIED**.


DATED:  July 20, 2009                                    _____s/ John R. Tunheim_____
at Minneapolis, Minnesota.                                      JOHN R. TUNHEIM
                                                           United States District Judge